339 So.2d 100 (1976)
David Brian ROBERSON
v.
STATE.
6 Div. 192.
Court of Criminal Appeals of Alabama.
August 31, 1976.
Rehearing Denied October 12, 1976.
*101 Mike McCormick, Birmingham, for appellant.
William J. Baxley, Atty. Gen., Randolph P. Reaves, Asst. Atty. Gen., Montgomery, for the State.
PER CURIAM.
On February 4, 1976, the defendant was convicted of robbery. He was sentenced to imprisonment in the State penitentiary for ten years. Motion for new trial was denied on April 9, 1976. Defendant appeals. McDonald's, Central Park, Birmingham, Jefferson County, Alabama, was deprived of $94.00 or $96.00, on the night of February 4, 1975, in the following manner:
Dewey Wayne Salters and a juvenile entered on foot. One of them handed Miss Kennedy, the cashier, a note on which was printed perpendicularly, "Give me all your money or else". Mr. Salters had a Miller's beer bottle in his coat pocket with his hand on it. He pointed the beer bottle through the cloth at Miss Kennedy, who handed over the money; and the two ran out with it. A robbery was thus committedPeople v. Gutkowsky, 100 Cal.App.2d 635, 224 P.2d 95. The evidence for the State furnished by Salters and the juvenile, tended to show that defendant David Brian Roberson instigated and was implicated in the crime.
Defendant knew a girl named Renee Owens. He claimed to have lived in the home of her mother, Susanne Owens, at a time when Mrs. Owens was an employee of McDonald's. He was then, "running around" with her daughter.
Dewey Wayne Salters testified that, on the night of the crime, and just before it, when defendant and his wife and Salters *102 and Teresa Uptain, and the juvenile were riding around together, defendant "asked if I wanted to rob someplace _ _ _ _ _ _ he talked me and (the juvenile) into it." He further testified that they took Teresa home and defendant sent him into her house to get pen and paper to write a note so that they would not have to speak; that they started to rob a Buzz Oil Company Station, but there was a drinking establishment next door with so many people coming in and out that they could not get in; that defendant looked across the street to McDonald's and said;
"Let's rob McDonald's because they ain't allowed to carry no guns and shoot anybody when they go in to rob them."
That Roberson drove them through McDonald's and behind it onto a road there and parked with his wife, while Salters and the juvenile went in.
It was a jury question whether or not Teresa Uptain knowingly furnished pen and paper for a robbery. It was, therefore, a jury question whether she was or was not an accomplice.
The evidence relied on by The State from witnesses other than the admitted accomplices and Miss Uptain to implicate the defendant included testimony that the robbers were white and that they were in a "light blue Chevrolet _ _ _ _ _ kinda old" _ _ _ _ _ that she (Lorraine Kennedy) could not tell the difference between light blue and a primer coat, or color that night; that defendant David Roberson was seen to get out of a 1957 Chevrolet shortly after the robbery and was arrested; that the known accomplices were in the car; that defendant Roberson was parked in front of the apartment building where Renee Owens lived, about three blocks from McDonald's just after the time when the robbery was said to have been committed; that he was driving a '57 Chevrolet, primer gray in color; that Renee Owens saw Roberson then and there, and he told her, "that they had just robbed McDonald's"; that "David kinda laughed and said we have just robbed McDonald's and they had stopped there to count the money"; that Renee Owens went in the house and called McDonald's.
Renee Owens had lived in the Camellia Apartments from August of 1974 until December 12, 1974. On the occasion when she was moving to the Ensley Apartments, there was a beer party at which defendant Roberson and one Thomas Tracey were present. In response to questions by the State and over objections of the Defendant, Tracey, a witness for the State, testified that then and there defendant Roberson asked the witness Tracey, "If I wanted to go with him on a robbery on a McDonald's, and I told him no."
The statement was voluntary and not in response to any question. The State's theory was that that testimony tended to show that the defendant was planning the robbery that he was convicted of. Defendant objected that it was voluntary, and The Court admonished the witness. Defendant later objected that the place was not shown. The Court overruled. The witness again stated the place and again volunteered the conversation. The Court then, ex mero motu, intervened to learn, if possible, the time of the conversation.
Defendant then moved for a mistrial on grounds: That the statement had been admitted over objection; That it was made some months and days prior to the alleged offense on February 4, 1975; That there was no connecting evidence prior to the admission of the statement; That it is hearsay; That the statement was so damaging of itself _ _ _ _; That it has no relevance; and its admission is prejudicial.
The motion was denied and defendant excepted. The Court then instructed the jury, in effect, that the statement was admitted and that the jury should determine whether or not the statement tended to connect the defendant to the robbery for which he was being tried.
All planning for the robbery of Buzz Oil Company and McDonald's at Central Park, according to the State's witnesses, took place in defendant's car on February 4, 1975. The question said to have been asked of Mr. Tracey was asked in Renee Owen's *103 apartment on December 12, 1974, of someone other than the conspirators. It did not refer to any particular McDonald's but only to "a McDonald's."
At that point in the trial defendant had not testified.
If such a generalized, prior statement could prove, or tend to prove anything, it could only be that defendant was planning a different robbery, or that, without specific plans, he was making fruitless overtures for a partner, or that he entertained thoughts of robbery or was willing to commit robbery; the jury would not be authorized to infer from such testimony that on December 12, 1974, defendant intended to commit the robbery of which he was convicted, although proof of statements tending to show such specific intent would be admissible. Morton v. State, Ala.Cr. App., 338 So.2d 423, 1976.
Since the statement is not susceptible of such construction, Brindley v. State, 193 Ala. 43, 69 So. 536; Johnson v. State, 87 Ala. 39, 6 So. 400, cannot justify its admission, or the instruction to the jury that it was admitted and that they, and not the judge, must determine its materiality or relevance.
Viewed in any light, the statement quoted by Mr. Tracey was hurtful to the defendant. Smitherman v. State, 33 Ala.App. 316, 33 So.2d 396, involved evidence of the purchase of a license to buy dynamite 20 months before the crime charged (dynamiting fish). The court held the evidence too remote in point of time. The court therein quoted Sorrell v. Scheuer, 209 Ala. 268, 96 So. 216:
"As a general rule, facts are deemed relevant which logically tend to prove or disprove the fact in issue, or which afford a reasonable inference, or shed light upon the matter contested; and facts bearing so remotely upon or collateral to the issue that they afford merely conjectural inference concerning the facts in issue should not be admitted in evidence."
By way of dictum, the Court of Appeals stated in Lackner v. State, 15 Ala.App. 31, 72 So. 506, in discussing a conviction of vagrancy for keeping a disorderly house:
". . . [T]he Court permitted one of the State's witnesses to testify . . . against the objection of the defendant, to the effect that she had admitted to him, about a year before the time when the defendant was charged with having committed the offense . . . that a person named by her had been the cause of her downfall, and that respectable persons refused to associate with her. No criminating fact or circumstances had been proven against the defendant authorizing a conviction, and the declaration was too remote in point of time to make it admissible in evidence for any other purpose than possibly to show the bad character of the defendant, which was not properly before the Court . . ."
In Roberson v. State, 23 Ala.App. 26, 119 So. 863, the statement admitted over objection was: "There goes the nigger." The court said: "This was an hour before the fatal shooting, was not part of the res gestae, and was inadmissible."
In Hadnot v. State, 3 Ala.App. 102, 57 So. 383, where dogs had been used to track the defendant, on cross-examination their trainer was asked, ". . . if these dogs were ever known to quit the trail and hunt rabbits." Objection was sustained. The court stated: "Evidence may be excluded when it is such as to furnish a basis for nothing more than mere conjectures or remote inferences in reference to the transaction under investigation." Citing, Wells Amusement Co. v. Means, 2 Ala.App. 574, 56 So. 594. Cases indicating that remoteness of time, vel non is largely in the trial court's discretion are reviewed and summarized in McDade v. State, 49 Ala.App. 533, 274 So.2d 89. It must be emphasized, however, that this court there quoted with approval from Smitherman, supra:
"Of course it can be said with certainty that the tendered evidence must not be so remote in point of time as to be without causal connection or logical relation to the main event. Notwithstanding evidence may be logically relevant, its admissibility *104 does not follow unless it has some probative value to the inquiry of instant concern."
Holly v. State, 46 Ala.App. 676, 248 So.2d 284, sheds no new light on the legal issue, especially since no objection was made to testimony that defendant had twice, some ten months earlier, paid fines for assault and battery upon deceased.
Pace v. State, 284 Ala. 585, 226 So.2d 645, is authority for "the general rule that matters resting in the sound discretion of the Trial Court will not be disturbed on appeal unless there has been a clear abuse of discretion."
None of the cases cited militates against the conclusion that the Trial Court is without discretion to admit a statement that is so remote as to time or circumstance that its relevance or materiality must rest in conjecture or speculation. On the authority of Smitherman, supra, and Sorrell, supra, we hold that the case must be reversed.
The judgment below is hereby
REVERSED AND REMANDED.
CATES, P. J., and TYSON and BOOKOUT, JJ., concur.
HARRIS, J., concurs in result.
DeCARLO, J., dissents.
DeCARLO, Judge (dissenting).
I do not believe the testimony criticized here was so remote in point of time as to be without logical relation to the offense committed.
Remoteness affects the weight and probative value of the evidence, not the admissibility. Smitherman v. State, 33 Ala.App. 316, 33 So.2d 396; McDade v. State, 49 Ala.App. 533, 274 So.2d 89.