* Reporter of Decisions' note: The petition for the writ of certiorari was filed under the name "Gary Davis Hart," without the "II" following that name.
Gary Davis Hart II was convicted of the capital offense of murder during a robbery in the first degree; §13A-5-40(a)(2), Ala. Code 1975. Hart was given a bifurcated trial, in accordance with § 13A-5-43. After the punishment phase of the trial, the jury returned its advisory verdict recommending death, with 11 votes "for death" and 1 vote "for life without the possibility of parole." The trial court found that one statutory aggravating circumstance and two statutory mitigating circumstances were present in this case. The trial court found that no nonstatutory mitigating circumstances existed. The trial court accepted the jury's recommendation and sentenced Hart to death by electrocution.
The Court of Criminal Appeals affirmed the conviction and the sentence. Hart v. State, 612 So.2d 520 (Ala.Cr.App. 1992). The Court of Criminal Appeals set out the facts in its opinion. However, we feel it necessary to recite the facts as stated by that court in order to better present the issues in this case.
 "The evidence presented at trial tended to show the following: On August 12, 1989, [Hart, age 16 years and 11 months] and his accomplice,[1] who were each armed with a handgun, entered the rear door of the L N Seafood restaurant in Mobile, Alabama. Standing near the rear door was the restaurant's bartender, Steve Mason. Upon entering the restaurant, [Hart] grabbed Steve Mason by the shirt, prodded him in the back with a .38 caliber pistol, and announced 'this is a hold up, take me to the safe.' Mr. Mason led [Hart] to the office where the victim, Todd Evans, was working. Mr. Mason then informed the victim that they were being robbed and that [Hart] wanted money. The victim did not reply but met the demand for money with a look of surprise. [Hart] then shouted, 'This ain't no bullshit,' and brought the pistol within two feet of the victim's head and fired. The bullet entered the left side of the victim's face, traveled through his brain, and then lodged under the scalp on the right side of his head.
 "Immediately following the shooting, Steve Mason retrieved a cash drawer from a filing cabinet in the victim's office and gave it to [Hart]. [Hart] and his partner then fled the scene on foot. They were spotted at a nearby hotel and after a brief chase were apprehended. During the chase, [Hart] discarded a .38 caliber pistol, which was later identified as the murder weapon. At the time of [Hart]'s arrest, he was in possession of $499 in cash."
In reviewing a death penalty case, this Court "may notice any plain error or defect in the proceeding under review, whether or not brought to the attention of the trial court," Rule 39(k), A.R.App.P.; Ex parte Bankhead, 585 So.2d 112
(Ala. 1991). This Court may "take appropriate appellate action" whenever the plain error "has or probably has adversely affected the substantial rights of the petitioner." Rule 39(k); see also Rule 45A, A.R.App.P. Therefore, this Court is not barred from reviewing any issues that were not raised by objection in the trial court. However, the failure to object will weigh against any claim of prejudice. Ex parteKennedy, *Page 538 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340,88 L.Ed.2d 325 (1985).
In his petition to this Court, Hart has raised the same issues that he presented to the Court of Criminal Appeals. The Court of Criminal Appeals issued a detailed opinion on all the issues raised by Hart. We have thoroughly reviewed the record before us as to issues raised, as well as for plain error. Having done so, we affirm the Court of Criminal Appeals as to issues I through XI and as to issue XIV discussed in its opinion. However, we will address the following three issues.
 I. Did the Court of Criminal Appeals err in holding that thetrial court correctly rejected an improper verdict in thiscase?
At the punishment phase of the trial, the trial court instructed the jury as follows:
 "The law says that in addition to making that decision, you must tell us what your vote is. It would require a vote of at least ten of your number to sentence the Defendant to death. And it would require a vote of at least seven of your number to sentence the Defendant to life without the possibility of parole."
(R.T. 460.)
The jury returned a verdict of 9 votes "for death" and 3 votes "for life without the possibility of parole." The State objected to the verdict, stating that the verdict was improper under § 13A-5-46.
Section 13A-5-46(f) provides:
 "The decision of the jury to return an advisory verdict recommending a sentence of life without parole must be based on a vote of a majority [7] of the jurors. The decision of the jury to recommend a sentence of death must be based on a vote of at least ten [10] jurors. The verdict of the jury must be in writing and must specify the vote."
(Emphasis added).
The trial court then instructed the jury as follows:
 "[T]he law says that upon the vote as it now stands, that I cannot accept your verdict. The law says that [a recommendation of] life without the possibility of parole must be based upon a vote of a majority of the jurors. That would require a vote of at least seven jurors. And for death it must be based upon a vote of at least ten jurors. Do I make myself clear? So I'm going to have to ask that you retire and reconsider your verdict. See if you can reach a verdict. It will take at least seven of your number to recommend life and at least ten of your number to recommend death."
After further deliberations, the jury returned a verdict of 11 votes "for death" and 1 vote "for life without parole."
In Kuenzel v. State, 577 So.2d 474 (Ala.Cr.App. 1990), aff'd, 577 So.2d 531 (Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991), the jury returned a verdict that was improper under § 13A-5-46(f). Although the record did not indicate the jury's vote, the defendant alleged that the vote was 8 "for death" and 4 "for life without parole." The Court of Criminal Appeals held that the verdict was not responsive to the trial court's instructions and that the verdict did not meet the statutory requirements.
 " 'Nothing seems better settled than that it is the duty of the court to look after the form and substance of the verdict of the jury, so as to prevent an unintelligible or insufficient verdict from passing into the records of the court.' Martin v. State, 29 Ala. App. 395, 396, 196 So. 753, 753-54 (1940). Accord, Bentley v. State, 20 Ala. App. 635, 104 So. 679 (1925). The instructions of the trial judge sending the jury back for further deliberations did not constitute a directed verdict or deprive the defendant of the 'leniency of the jury.' United States v. Walker, 456 F.2d 1037, 1039 (5th Cir. 1972). Where the verdict of the jury is not responsive to the instructions of the trial judge and the requirements of the law, the trial judge has a duty to reject that improper verdict and require the jury to resume its deliberations. Doughty v. State, 228 Ala. 568, 570, 154 So. 778, 779-80 (1934)."
Kuenzel, 577 So.2d at 524.
In the case at bar, it is clear that the jury's initial return was not proper under *Page 539 
the requirements of the law. In asking the jury to deliberate further, the trial court did not indicate which punishment the jury should vote for. We see absolutely no evidence that the trial court coerced the jury into returning its verdict. Therefore, we see no error in regard to this issue.
 II. Did the Court of Criminal Appeals err in holding that thetrial court properly admitted a presentence report thatincluded a portion of a psychological evaluation performed onHart?
Before Hart's trial, the State moved to have Hart transferred from the juvenile court to the circuit court to stand trial as an adult. In order to rule on that motion, the court ordered a youthful offender report on Hart, pursuant to § 12-15-34(e), Ala. Code 1975. Included in that report was a psychological evaluation performed by a licensed psychologist.
After the jury recommended a sentence of death, the trial court ordered a presentence investigation on Hart, pursuant to § 13A-5-47(b). In the presentence report, Hart's probation/parole officer included portions of the psychological evaluation performed on Hart for the youthful offender report.
Hart objected to the use of the portions of the psychological evaluation because he was not given Miranda[2]
warnings before he was interviewed for the psychological report, and in support of his objection he cited Bearfootv. Texas. (R.T. 478). (After reviewing the record from the sentencing hearing, we find it apparent that Hart was relying on a case from Texas, Estelle v. Smith, 451 U.S. 454,101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).) The trial court did not rule on Hart's objections at that time.
At the outset, we note that the purpose of a presentence report is to aid the trial judge and that it is never viewed by the jury. Also, the trial judge in this case had already seen the entire psychological report on Hart (contained in the youthful offender report), because the trial judge was the same judge who had denied Hart's petition for youthful offender status.
Section 13A-5-47(b) provides:
 "Before making the sentence determination, the trial court shall order and receive a written pre-sentence investigation report. The report shall contain the information prescribed by law or court rule for felony cases generally and any additional information specified by the trial court. No part of the report shall be kept confidential, and the parties shall have the right to respond to it and to present evidence to the court about any part of the report which is the subject of factual dispute. The report and any evidence submitted in connection with it shall be made part of the record in the case."
Rule 3, A.R.Crim.P.Temp., was applicable when Hart was convicted. That rule provided:
 "(b) Content. The presentence report may contain a description of:
 "(1) The offense and the circumstances surrounding it;
 "(2) The defendant's prior criminal and juvenile record, if any;
"(3) The defendant's educational background;
 "(4) The defendant's employment background, financial condition and military record, if any;
 "(5) The defendant's social history, including family relationships, marital status, interests and activities, residence history and religious affiliations;
 "(6) The defendant's medical and psychological history, if available; and
 "(7) Any other information required by the court."
The purpose of the presentence investigation report is to aid the sentencing judge in determining whether the jury's advisory verdict is proper and if not, what the appropriate sentence should be. Clearly, this Court, in adopting the temporary rule, considered the psychological history of a defendant an important part of sentencing. In determining the sentence, the *Page 540 
trial judge must consider the presentence investigation report and any evidence submitted in connection with it, in addition to the evidence presented at trial and during the sentencing hearing. Kuenzel v. State, 577 So.2d 474.
In substance, the psychological evaluation placed in the presentence report contained observations by state psychologist Larry D. Faison. Faison administered the following tests to Hart: Weschler Intelligence Scale for Children — Revised, Wide Range Achievement Test — Revised (Level II), Bender-Gestalt Questionnaire, Minnesota Multiphasic Survey, Child Behavior Checklist, and Personality Inventory for Children. In his psychological evaluation, Faison reported the test results. A portion of his findings were placed in the presentence report on Hart.
On appeal, Hart argues that the portion of the psychological evaluation contained in the presentence report contains hearsay and that he was not given Miranda warnings before he was interviewed for the psychological evaluation.
Hart relies on Estelle v. Smith, 451 U.S. 454,101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). In Estelle, the trial court, sua sponte, ordered a psychiatric evaluation of the defendant in order to determine whether he was competent to stand trial. A psychiatrist interviewed the defendant for 90 minutes and concluded that he was competent to stand trial. The defendant was later tried by a jury and was found guilty. The State of Texas requires a bifurcated trial, as Alabama does, with a guilt phase and a penalty phase. If the defendant is found guilty, then the same jury, in a separate proceeding, determines punishment. The Texas Code provides that the jury answer three questions: (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that death would result; (2) whether there is a probability that the defendant will commit criminal acts of violence that will constitute a continuing threat to society; and (3) if the question is raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased. Tex. Code Crim.Proc.Ann., Art. 37.071(b)(1)-(3). In regard to the second question, the jury is required to determine the likelihood of the defendant's future dangerousness.
At the beginning of the punishment phase in Estelle, the State rested its case, subject to rebuttal. After the defendant presented several witnesses on his behalf, the State called the psychiatrist who had examined the defendant to make the psychiatric evaluation determining the defendant's competency to stand trial. Over the defendant's objection, the psychiatrist testified that the defendant would continue to be dangerous in the future. The jury answered all three questions in the affirmative, thus making the death penalty mandatory for the defendant.
The Supreme Court in Estelle held that the defendant's Fifth and Sixth Amendment rights had been violated. The Supreme Court determined that the psychiatrist's findings, made for the limited, neutral purpose of determining competency to stand trial, were being used by the State "for a much broader objective that was plainly adverse to [the defendant]."Estelle, 451 U.S. at 465, 101 S.Ct. at 1874. The Court stated, "Of course, we do not hold that the sameFifth Amendment concerns are necessarily presented by all types of interviews and examinations that might be ordered or relied upon to inform a sentencing determination." 451 U.S. at 469, n. 13, 101 S.Ct. at 1876, n. 13.
We disagree with Hart's contention that the presentence report was barred because it contained portions of a psychologist's report.
We think the situation in this case is distinguishable from the situation in Estelle. In Estelle, the jury heard the testimony from the psychiatrist. In this case, the jury did not see the presentence report that contained the psychological evaluation on Hart; only the judge saw the report. The psychological report was never seen by the jury; nonetheless, the jury recommended a sentence of death. *Page 541 
In Estelle, the jury was required to apply the death penalty if three questions were answered in the affirmative. One of those questions was whether the defendant would be dangerous in the future. The psychiatrist in Estelle
testified that the defendant would be dangerous in the future and, in essence, testified as to his opinion on one of the three questions the jury had to answer in determining whether to impose the death penalty. The jury relied upon that testimony and found that the defendant would continue to be a danger in the future; thus, it imposed a death sentence. In this case, the trial judge was required under § 13A-5-47(d) not only to consider the presentence report but to consider the evidence presented at trial and the evidence presented during the sentence hearing before the jury in determining whether aggravating or mitigating circumstances existed.
In Ex parte Davis, 569 So.2d 738 (Ala. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1091, 112 L.Ed.2d 1196 (1991), the defendant argued that the presentence report should not have been admitted at sentencing because it contained hearsay, was prejudicial, and contained admissions not preceded by waivers of his Fifth and Sixth Amendment rights. This Court held that the report was admissible. In Kuenzel v.State, 577 So.2d 474, 528 (Ala.Cr.App. 1990), the Court of Criminal Appeals wrote:
 " 'Courts are permitted to consider hearsay testimony at sentencing. . . . While hearsay evidence may be considered in sentencing, due process requires both that the defendant be given an opportunity to refute it and that it bear minimal indicia of reliability. . . . These protections apply not just to hearsay testimony but also to any information presented at sentencing. . . . When, as in this case, the defendant claims that his due process rights were violated by the sentencing court's reliance on materially false information, the defendant must establish not only that the disputed information is materially false or unreliable, but also that the sentencing judge relied on the information.' "
(Citing United States v. Giltner, 889 F.2d 1004, 1007
(11th Cir. 1989), on remand, 965 F.2d 1053 (11th Cir. 1992), on rehearing, 972 F.2d 1563 (11th Cir. 1992)).
Because the psychologist's report had already been viewed by the trial judge and was not shown to the jury, there was no error in admitting the presentence report. Additionally, the defendant failed to show that the information in the psychologist's report was materially false and that the trial court relied on the information in determining the defendant's sentence. The record from the sentencing hearing and the trial court's sentencing order do not indicate that the trial court relied on the portion of the presentencing report that contained the psychologist's report. Therefore, there was no error on this issue.
 III. Did the Court of Criminal Appeals err in holding that thetrial court had not erred in finding that no nonstatutorymitigating circumstances existed?
In its sentencing order, the trial court stated as follows:
 "In compliance with the statute [§ 13A-5-51], the Court finds the following with respect to mitigating circumstances:
 "(1) The Defendant has no significant history of prior criminal activity within the meaning of Section 13A-5-51(1); therefore, this mitigating circumstance does exist and is considered;
 "(2) There was no evidence that the capital offense was committed while the Defendant was under the influence of extreme mental or emotional disturbance; therefore, this mitigating circumstance does not exist and is not considered;
 "(3) The victim was not a participant in Defendant's conduct, nor did he consent to it; therefore, this mitigating circumstance does not exist and is not considered;
 "(4) The Defendant was not an accomplice in the capital offense committed by another person, and his participation was not relatively minor. Although he had *Page 542 
an accomplice for the commission of the robbery, the Defendant himself was the one who committed the murder of the intentional killing type; therefore, this mitigating circumstance does not exist and is not considered;
 "(5) There was no evidence that the Defendant acted under extreme duress or under the substantial domination of another person; therefore, this mitigating circumstance does not exist and is not considered;
 "(6) The capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired; therefore, this mitigating circumstance does not exist and is not considered;
 "(7) The Court finds that the Defendant was sixteen years of age at the time of the commission of the crime, although he was 37 days from his 17th birthday. The Court does find that the age of the Defendant at the time of the crime is a mitigating circumstance, does exist, and is considered by the Court."
 "The Court finds no non-statutory mitigating circumstances.
". . . .
 "Having weighed the single statutory aggravating circumstance [murder during the commission of robbery in the first degree] against all the statutory and non-statutory circumstances, and having given careful consideration and substantial weight to the evidence and the jury's advisory recommendation, the Court finds that the aggravating circumstance in this case outweighs the mitigating circumstances and that the punishment should be death."
(C.R. 126-28.)
In Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954,57 L.Ed.2d 973 (1978), the Supreme Court held that a death penalty statute cannot constitutionally preclude consideration of relevant mitigating factors. However, Lockett does not require that all evidence offered as mitigating evidence be found to be mitigating. Lockett provides that a state may not exclude evidence that the defendant claims is mitigating. This does not mean that all evidence offered by the defendant as mitigating must be found to be mitigating and considered as such in the sentencing process.
The Court of Criminal Appeals correctly stated the following in Cochran v. State, 500 So.2d 1161, 1176 (Ala.Cr.App. 1984), reversed and remanded on other grounds, 500 So.2d 1179
(Ala. 1985), 500 So.2d 1188 (Ala.Cr.App.), aff'd,500 So.2d 1064 (Ala. 1986), cert. denied, 481 U.S. 1033, 107 S.Ct. 1965,95 L.Ed.2d 537 (1987):
 "It is not required that evidence submitted by the accused as a nonstatutory mitigating circumstance be weighed as a mitigating circumstance by the trial judge. Mikenas v. State, 407 So.2d 892, 893 (Fla. 1981), cert. denied, 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982).
 " 'Although consideration of all mitigating circumstances is required by the United States Constitution, Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the decision of whether a particular mitigating circumstance in sentencing is proven and the weight to be given it rest with the judge and jury. Lucas v. State, 376 So.2d 1149
(Fla. 1979).' Smith v. State, 407 So.2d 894, 901 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982)."
After reviewing the entire record on appeal, along with the sentencing order, we find it clear that the trial court understood its duty to consider all the statutory and nonstatutory mitigating circumstances in sentencing the defendant and that it did not abuse its discretion in finding that no nonstatutory mitigating circumstances existed. Therefore, no error exists on this issue.
Based on the foregoing, the judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] Hart's accomplice, 16-year-old Dennis Thomas, was sentenced to life imprisonment without the possibility of parole.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966). *Page 543