The appellant was convicted of the attempted murder of Kelli Lowe Dunn.[1] He was sentenced to life imprisonment in the state penitentiary, this sentence to be served consecutively with sentences being served by the appellant for his conviction for one count of murder and two counts of attempted murder, arising from the same series of shootings. These other convictions resulted from Oryang's trial in Montgomery County Circuit Court and were affirmed on appeal by this court. See Oryang v. State,642 So.2d 979 (Ala.Cr.App. 1993).
 I
The appellant argues that he suffered actual prejudice because of the pretrial publicity which, he says, had saturated the community in which he was tried and had a prejudicial impact on the prospective jurors. He argues that the trial court erred in denying his motion for a change of venue based on extensive pretrial publicity. The appellant raised this same argument concerning his trial in Montgomery County for the other shootings, which occurred on the same night *Page 992 
as the attempted murder for which he was convicted in Montgomery County.
At trial and on appeal, the appellant points to a number of newspaper articles concerning the offenses, the investigation, the arrests made pursuant to the investigation. The appellant also refers to several articles that dealt with his trial in Montgomery County and with post-trial matters. A number of the pretrial articles addressed the public's fear of and concern over the nature of these random shootings and gang violence.
The appellant also argues that, because so many potential jurors stated that they had pretrial knowledge of the offense, that it is clear that he suffered actual prejudice from the pretrial publicity.
 "[A] change of venue must be granted only when it can be shown that the pretrial publicity has so 'pervasively saturated' the community as to make the 'court proceedings nothing more than a "hollow formality," ' Hart v. State, 612 So.2d 520, 526-27
(Ala.Cr.App.), affirmed, 612 So.2d 536 (Ala. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2450, 124 L.Ed.2d 666 (1993), citing Rideau v. Louisiana, 373 U.S. 723, 726 [83 S.Ct. 1417, 1419, 10 L.Ed.2d 663] (1963), or when actual prejudice can be demonstrated. The burden of showing this saturation of the community or actual prejudice lies with the appellant. Sheppard v. Maxwell, 384 U.S. 333
[86 S.Ct. 1507, 16 L.Ed.2d 600] (1966). In order to show community saturation, the appellant must show more than the fact 'that a case generates even widespread publicity.' Thompson v. State, 581 So.2d 1216, 1233 (Ala.Cr.App. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992). ' "Newspaper articles alone would not necessitate a change of venue unless it was shown that the articles so affected the general citizenry through the insertion of such sensational, accusational or denunciatory statements, that a fair and impartial trial was impossible. Patton v. State, 246 Ala. 639, 21 So.2d 844 [1945]." ' Thompson v. State, supra at 1233, quoting McLaren v. State, 353 So.2d 24, 31 (Ala.Cr.App.), cert. denied, 353 So.2d 35
(Ala. 1977). Furthermore, in order for a defendant to show prejudice, the ' "proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination." Anderson v. State, 362 So.2d 1296, 1299 (Ala.Crim.App. 1978).' Ex parte Grayson, 479 So.2d 76, 80 (Ala. 1985), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157
(1985)."
Oryang v. State, 642 So.2d at 983.
A review of the newspaper articles contained in the record, as well as those included in the appellant's brief on appeal, indicates that they were predominately factual summaries of the offense, the investigation of the case, and the apprehension of the perpetrators. The articles did not contain accusations against the appellant, nor were they denunciatory. Although there was language reflecting the fear in the community concerning the nature of these offenses, whereby the perpetrators casually and unexpectedly approached other cars on a public road and arbitrarily shot into the cars, "[i]t would be impossible to give an accurate account of this random violence, occurring during Christmas time, without generating public fear. A defendant is clearly not entitled to a change of venue every time his actions cause public fear or apprehension." Oryang v. State, supra, at 984. Moreover, despite the fact that one of the articles contains language from an official referring to the gunman, who was at that time still at large, as a " 'mindless animal,' " this reference does not make the pretrial publicity surrounding the case "inherently suspect.' " Cf. Thomas v. State, 539 So.2d 375,392-94 (Ala.Cr.App.), affirmed, 539 So.2d 399 (Ala. 1988), cert. denied, 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 709 (1989).
 "Certainly there was widespread media coverage of the events surrounding this case. . . . However, in order to obtain a change of venue, it must be shown that the pre-trial publicity surrounding the case was inherently prejudicial. Anderson [v. State, 362 So.2d 1296
(Ala.Cr.App. 1978)].
 "After our review of the defense's exhibits relating to this issue and the testimony adduced at the hearing on this question, we conclude that the publicity in this case *Page 993 
was factual and objective. The bulk of the publicity surrounding this case dealt with the details of the appellant's offense and the developments in his case.
 "The appellant seems to contend that the pre-trial publicity made the community fearful of the appellant, and thus, prejudiced him within the community. While we admit the community was afraid of the appellant before his capture, we believe this was due more to the fact that 'there was a killer on the loose' than to statements by the media concerning the appellant.
 "The great majority of the publicity in this case occurred between the time of the murders . . . and the appellant's capture. . . . Thereafter, the publicity in this case greatly diminished. The appellant's trial took place . . . seven months after the bulk of the media coverage in this case. The passage of time cannot be ignored as a factor in bringing objectivity to a case in which there has been extensive pre-trial publicity."
Holladay v. State, 549 So.2d 122, 125-26 (Ala.Cr.App. 1988), affirmed, 549 So.2d 135 (Ala.), cert. denied, 493 U.S. 1012
(1989). See also, Oryang v. State, supra, at 983.
Similarly, in this case, the majority of the pre-trial articles of which the appellant complains were published at the time of the offense, during the initial investigation, and at the time of the arrests. The appellant was not brought to trial in Elmore County on this charge of attempted murder until April 13, 1993. The offense occurred on December 16, 1991, and the appellant was arrested on December 19, 1991. Thus, approximately one year and four months elapsed from the time of the circulation of these articles to the appellant's trial. Moreover, although the appellant also cites a number of articles that were published around the time of the appellant's trial and conviction on the charges in Montgomery County, the Montgomery trial occurred in May 1992, approximately one year before this trial. The passage of so much time clearly weighs against any prejudicial impact that the articles may have had.
The appellant has also failed to show any actual prejudice resulting from the pre-trial publicity based on the prospective jurors' responses during voir dire examination. See Ex parteGrayson, 479 So.2d 76, 80 (Ala.), cert. denied, 474 U.S. 865,106 S.Ct. 189, 88 L.Ed.2d 157 (1985). Although a large number of the prospective jurors were familiar with the facts and the circumstances of this offense, those who indicated bias against the appellant or an inability to fairly reach a decision based on the nature of this offense were excused for cause. The appellant argues that the fact that so many prospective jurors were excused for cause based on pretrial publicity[2] demonstrates actual prejudice. Although a juror roster does not appear in the record, in the course of conducting individual voir dire of each juror who indicated any knowledge of the case, the trial court excused those who indicated that they did not know anything of the case until the following morning. He named 30 such individuals. Approximately 40 individuals indicated that they did have knowledge of the case and, other than those 15 who were excused for cause, they indicated that they could fairly and impartially arrive at a verdict based on the evidence introduced at trial alone. Although there were approximately 15 individuals excused for cause because of the pre-trial publicity, a large number of potential jurors remained who were not affected by any such publicity and who indicated that they could fairly try the appellant. The defendant is not entitled to jurors who are totally ignorant of the facts and issues involved in the case or to jurors who never entertained a preconceived notion as to the defendant's guilt or innocence. Ex parte Grayson, 479 So.2d 76, 80 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157
(1985). A defendant is entitled to a trial by jurors who can lay aside any preconceived impressions or opinions and render a verdict based on the evidence which is presented at trial, id.
The record in this case indicates that the appellant received such a trial. See *Page 994 
also Murphy v. Florida, 421 U.S. 794, 799800, 95 S.Ct. 2031,2036, 44 L.Ed.2d 589 (1975); Irvin v. Dowd, 366 U.S. 717, 723,81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961). Because the appellant has failed to show that the pre-trial publicity in this case was "inherently prejudicial," Holladay v. State, supra, or "presumptively prejudicial," Kuenzel v. State,577 So.2d 474 (Ala.Cr.App. 1990), affirmed, 577 So.2d 531
(Ala. 1991), and the appellant has also failed to show that there was actual juror prejudice, we find no abuse of discretion by the trial court or manifest error in his finding of impartiality and his denial of the appellant's motion for change of venue. Irvin v. Dowd, 366 U.S. at 724,81 S.Ct. at 1643; Ex parte Grayson, 479 So.2d at 80.
 II
The appellant argues that there was insufficient evidence to sustain his conviction of attempted murder, because, he says, there was insufficient evidence presented as to his intent. "The question of intent is hardly ever capable of direct proof. Such questions are normally questions for the jury.McMurphy v. State, 455 So.2d 924 (Ala.Crim.App. 1984); Craigv. State, 410 So.2d 449 (Ala.Crim.App. 1981), cert. denied,410 So.2d 449 (Ala. 1982)." Loper v. State, 469 So.2d 707, 710
(Ala.Cr.App. 1985). "Where one assaults another by the use of a deadly weapon, the law will infer from that fact that he designed to accomplish the probable and natural results of his act, in the absence of proof to the contrary." Snipes v. State,364 So.2d 424, 426 (Ala.Cr.App. 1978).
 " 'A killing is not accidental when the act causing death is done intentionally. Lewis v. State, 96 Ala. 6, 10, 11 So. 259 (1891). Any contention that the death was accidental "ignores the nature of the enterprise that the defendant . . . [was] engaged in." Sanders v. State, 16 Ala. App. 511, 513, 79 So. 504 (1918).'
 "Toles v. State, 484 So.2d 512, 515
(Ala.Cr.App. 1985); Phelps v. State, 435 So.2d 158, 165 (Ala.Cr.App. 1983). Moreover, as we have previously held, 'Intent may be inferred from the use of a deadly weapon.' Scanland v. State, 473 So.2d 1182, 1185 (Ala.Cr.App.), cert. denied, 474 U.S. 1035, 106 S.Ct. 602, 88 L.Ed.2d 581 (1985)."
Brownlee v. State, 545 So.2d 151, 162 (Ala.Cr.App. 1988), affirmed, 545 So.2d 166 (Ala. 1989), cert. denied, 493 U.S. 874,110 S.Ct. 208, 107 L.Ed.2d 161 (1989). See also Rudolph v.State, 344 So.2d 790, 792 (Ala.Cr.App. 1977), cert. denied,344 So.2d 792 (Ala. 1977).
The victim in this case testified that, on the day in question, she had been Christmas shopping in Montgomery and was returning to her fiancé's home in Wetumpka. She testified that she was travelling in her automobile, when she observed a car approaching her and, as the car passed her car, she heard a loud noise. She stated that she pulled off the road and, when she looked down, her insides "were laying in her lap." The victim was hospitalized for two months as a result of the shooting. The record indicates that, during this series of shootings, the appellant killed one person and wounded others.
 "We find appellant's contention that he only had a general intent to shoot at cars as they passed to be without merit. The location of the bullet entry points, in most of these incidents, and the fact that one person was killed and another wounded, negates such a contention. We find that the evidence was sufficient to sustain appellant's convictions."
Free v. State, 495 So.2d 1147, 1159 (Ala.Cr.App. 1986). Under the facts presented here, it is clear that the jury could have determined that the appellant intended to kill the victim as she passed in her automobile.
Moreover, although there is no direct proof that the appellant was the one who fired the shot that hit the victim, "[a]ll persons concerned in the commission of a felony must be indicted, tried, and punished as principles. Section 13-9-1, Code of Ala. 1975."[3] Kendrick v. State, 377 So.2d 1112, 1113
 *Page 995 
(Ala.Cr.App. 1979), writ denied, 377 So.2d 1114 (Ala. 1979).
 III
The appellant argues that the trial court erred in allowing gruesome photographic evidence to be admitted at trial, thereby depriving him of a fair trial. The photographs referred to by the appellant depict the injury sustained by the victim following her hospitalization. The appellant also refers to a photograph of the body of the deceased victim of the shooting spree, who was not the subject of this case, but whose murder occurred as a result of the same series of shootings.
The photographs of the victim's wounds were properly admitted as illustrative of testimony in the case. Webb v. State,539 So.2d 343, 348 (Ala.Cr.App. 1987).
Before trial, the trial court heard arguments relating to the State's intention to introduce into evidence five photographs of Julia Lindsey, the murder victim, at the scene of the offense. Julia Lindsey's death. Defense counsel objected to the introduction of any photographs of Julia Lindsey on the basis that they were not relevant to the present case, and the trial court ordered the prosecutor to show the relevance of the photographs of Julia Lindsey or how those photographs would aid the jury in their determination of this cause. The prosecutor responded that the murder of Julia Lindsey occurred within one hour of the instant offense and thus was part of the res gestae. She noted that the appellant was not objecting to photographs of the truck belonging to Barry Kelly, who was also a victim of the appellant's gunfire, and as to whom the appellant had been tried in Montgomery County. The State also argued that its theory of the case was that three individuals engaged in a shooting spree in Montgomery and Elmore counties as part of a continuous action. The three perpetrators shot at three different vehicles during this episode. Because there were three guns involved, the type of ammunition determined to have caused each victim's injuries differed depending on which gun hit each target. The weapon that the State submitted that it would prove was purchased by the appellant had killed Julia Lindsey, even though shells from that weapon had not been used fire at the victim in this case. That weapon was ultimately found in the automobile from which the perpetrators shot at the victims. The trial court responded that in light of the possible prejudice to the appellant weighed against the probative value of the photographs, the State would be allowed to introduce only one photograph of the body of Julia Lindsey.
Even if the probative value of the photograph, i.e., its tendency to prove the appellant's complicity and intent in committing the offense in this case, was outweighed by its prejudicial effect, any error in its admission was harmless in light of the evidence presented at trial. See Quinlivan v.State, 627 So.2d 1082 (Ala.Cr.App. 1992) (wherein this court held that photographic evidence depicting a demonstration or test showing that the same bullet made both holes at the scene of the crime was speculative and unreliable, its admission was harmless to the appellant). In Hambright v. State,432 So.2d 13, 14 (Ala.Cr.App. 1983), this court held that, even if photographs of a knife should not have been admitted at trial because the knife depicted had not been sufficiently identified as the murder weapon, the error in the admission of the photographs was harmless. In so finding, this court reasoned that the evidence was uncontradicted that the victim was stabbed with a knife and the photographs "in and of themselves did not implicate or incriminate the defendant." Id. Similarly, the actual photograph of Julia Lindsey's body did not implicate or incriminate the appellant.
 " 'The Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), held that a conviction need not be reversed if the constitutional error was harmless. The purpose of the harmless error rule is to avoid "setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result." Id. at 22, 87 S.Ct. at 827. This is precisely such a case.' United States v. Satterfield, 743 F.2d 827, 847 (11th Cir. 1984), cert. denied, 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985) *Page 996 
(evidence against accused so extensive that admission of illegally seized shotgun was harmless beyond a reasonable doubt even though shotgun constitutes further evidence of accused's complicity in kidnapping); United States v. Gramlich, 551 F.2d 1359, 1363 (5th Cir.), cert. denied, 434 U.S. 866, 98 S.Ct. 201, 54 L.Ed.2d 141
(1977) (admission of illegally seized passport and airline ticket to Colombia harmless where the accused was apprehended red-handed with a large quantity of marijuana). Here, the murder weapon and the photographs were not 'crucial' to the case against the defendant. Compare United States v. Character, 568 F.2d 442, 445 (5th Cir. 1978). 'The admission of improper evidence to establish an undisputed fact is harmless error.' Cassidy v. State, 369 So.2d 310, 312 (Ala.Cr.App. 1979). See also Roberson v. State, 217 Ala. 696, 699, 117 So. 412, 415 (1928) (admission of unconnected bullet found near scene of shooting held harmless error where accused admitted killing the deceased); Scott v. State, 337 So.2d 1342, 1348 (Ala.Cr.App. 1976) (admission of improperly seized shotgun and coat harmless error where there did not involve a disputed evidentiary fact and the shooting was admitted by accused); Ringstaff v. State, 451 So.2d 375, 383 (Ala.Cr.App. 1984) (admission of negative results of improper search held not harmful)."
Dalton v. State, 488 So.2d 13, 14-15 (Ala.Cr.App. 1986).
Under the facts of the present case, any error in the admission of the single photograph of Julia Lindsey's body, whose murder was part of the res gestae of the present offense, was harmless. Rule 45, A.R.App.P.
 IV
The appellant argues that the evidence of his general demeanor when he was intoxicated and of his statement that he intended to kill someone constituted character evidence and the admission of this evidence was improper under the general exclusionary rule. The record indicates that a State's witness, who testified that he had lived with the appellant for approximately three months and had known him for approximately three years, stated that when the appellant drank, he often became violent. He further testified that on one occasion, after drinking, the appellant told him that one day he was going to kill someone "for the hell of it." The State's witness testified that the appellant made this comment some time in 1990; the shootings occurred in December 1991. The record further indicates that the appellant filed a motion in limine seeking to prevent the State from eliciting this testimony from this witness. The trial court denied the motion.
At trial, an extensive hearing was held concerning the admission of testimony as to the appellant's conduct when he drank. During that hearing, the trial court stated that such testimony, rather than addressing the appellant's bad character as defense counsel contended, addressed his state of mind and his conduct as a result of his intoxication. The trial court cited C. Gamble, McElroy's Alabama Evidence § 60.03(9) (4th ed. 1991).
According to C. Gamble, McElroy's Alabama Evidence § 60.03(1)(b) (4th ed. 1991), "[t]he State is entitled to prove the accused's intoxication at the time of the alleged offense as tending to show his mental condition and hence his conduct at such time." Moreover, "[i]f a reasonably close question is presented as to whether or not certain conduct of a person is indicative of his intoxication, evidence is admissible that such conduct corresponded with his conduct when he was intoxicated on other occasions." § 60.03(9). Thus, in Alabama, evidence that certain conduct that is symptomatic of an individual's actions when he is intoxicated corresponds with present conduct may be admitted where the evidence is questionable as to whether he was intoxicated at the time of the present incident.
In this case, there was evidence that the appellant was quiet in his dealings with the police and that none of the bullets used in the offense against this victim came from the appellant's gun. In light of defense counsel's argument to the judge that the evidence of the appellant's intoxication was questionable because only one witness had testified that the appellant smelled mildly of alcohol on the *Page 997 
night of the offense, the evidence of the appellant's violent conduct when intoxicated was relevant. This evidence of the appellant's violent behavior when intoxicated was not admitted as evidence of the appellant's bad character, but rather as evidence of his state of mind and his conduct as a result of his intoxication. The State presented evidence in the present case that the appellant had been drinking when he committed the violent shootings. The State presented evidence that when the appellant had been drinking on prior occasions, the appellant had become violent, which evidence was relevant to show that the appellant's conduct on December 16, 1991, when he fired a gun into three vehicles, corresponded with his conduct when intoxicated.
Further, the testimony concerning the appellant's statement that one day he was going to kill someone "for the hell of it," was relevant and not too remote. The appellant argues that he lacked the requisite intent to commit this offense, see part II of this opinion; thus this prior statement was clearly relevant to prove that the appellant intended to murder individuals "for the hell of it" or randomly, such as by shooting into passing vehicles. But see Roberson v. State, 339 So.2d 100, 102-03
(Ala.Cr.App.), cert. denied, 339 So.2d 104 (Ala. 1976) (wherein the defendant's prior statement that he wanted a third party to go with him on a robbery of a McDonald's restaurant was held not to be relevant in a case involving the robbery of a McDonald's restaurant two months following the appellant's statement, because the plans for the actual robbery were made subsequent to the statement, and the prior statement "did not refer to any particular McDonald's but only to 'a McDonald's.' " Id. at 103.)
Moreover. "[t]he rule is stated to be that the acts, declarations and demeanor of an accused before or after the offense whether a part of the res gestae or not are admissible against him, but unless a part of the res gestae are not admissible for him." Smoot v. State, 381 So.2d 668, 671
(Ala.Cr.App. 1980), and cases cited therein.
The trial court did not abuse its discretion in allowing this prior statement made by the appellant into evidence against the argument that it was too remote. In White v. State,380 So.2d 348 (Ala.Cr.App. 1980), this court held that evidence that a defendant, who was charged with the murder by shotgun of his wife, had cut his wife prior to the offense was admissible and not too remote, although the only evidence presented as to the date of the prior cutting was that it occurred " 'a long time ago.' " In holding that the trial court did not abuse its discretion in allowing this evidence, this court stated:
 " 'Ordinarily, remoteness of time affects the weight and probative value of evidence rather than its admissibility. It rests largely in the enlightened discretion of the court whether or not such proof will be allowed. Remoteness has regard also to factors and considerations other than mere lapse of time. It results, therefore, that it is practically impossible and not at all accurate to attempt to state a fixed rule or standard with particular reference to the time element. Of course it can be said with certainty that the tendered evidence must not be so remote in point of time as to be without causal connection or logical relation to the main event. Notwithstanding evidence may be logically relevant, its admissibility does not follow unless it has some probative value to the inquiry of instant concern.'
 "Smitherman v. State, 33 Ala. App. 316, 318-319, 33 So.2d 396 (1948).
"Remoteness with respect to the admissibility of evidence is a relative idea and varies in its application according to the facts of each case. Dorch v. State, 40 Ala. App. 475, 476,115 So.2d 287 (1959).
"While remoteness of time alone does not render the prior event inadmissible, Fields v. State, 362 So.2d 1319, 1320
(Ala.Cr.App. 1978), the trial court 'is without discretion to admit a statement that is so remote as to time or circumstances that its relevance or materiality must rest in conjecture and speculation.' Roberson v. State, 339 So.2d 100, 104
(Ala.Cr.App.), cert. denied 339, So.2d 104 (Ala. 1976).
 " 'Whether evidence offered is too remote to be admissible is for the court, in *Page 998 
the exercise of a sound discretion, and such ruling will not be revised on appeal unless it is plain that error was committed. However, where the competency of evidence is doubtful, the better practice is to allow the evidence to go to the jury, leaving them to determine its weight and credibility. That is to say, if the evidence tends to prove a fact for determination by the jury, however slight the evidence may be, it is relevant.'
 "Sorrell v. Scheuer, 209 Ala. 268, 269, 96 So. 216, 217 (1923). (Citations omitted.)
 "See also Pitts v. State, 261 Ala. 314, 316, 74 So.2d 232 (1954)."
White v. State, 380 So.2d at 350. See also Lundy v. State,539 So.2d 324, 331 (Ala.Cr.App. 1988) (wherein this court held that the trial court did not abuse its discretion in holding admissible the substance of conversations by the defendant that allegedly had occurred approximately one and one-half to two years prior to the offense at hand).
Because the testimony concerning the appellant's prior behavior when intoxicated and the testimony concerning the appellant's prior declaration that he planned to kill someone "for the hell of it" were relevant and not too remote, the trial court properly allowed the testimony into evidence at trial.
 V
The appellant argues that the prosecution violated his due process rights when it failed to disclose exculpatory evidence, specifically, evidence that an accomplice, who testified as a witness for the state had asked the trial court to reduce his sentence on the basis of his testimony against the appellant. The record indicates that, in his motion for a new trial, the appellant argued that the State improperly suppressed exculpatory evidence concerning the accomplice's motion to reconsider his sentence filed with the trial court. The prosecutor responded that there was no contract or agreement between the accomplice and the State concerning his testimony and that the accomplice's attorney had filed the motion without the State's involvement. The prosecutor stated that no offer or inducement had been made by the State to secure the accomplice's testimony. The trial court noted that public record showed that the appellant's motion was filed in September 1992, well before the instant trial, which occurred in April 1993. The trial court pointed out that the motion was contained in the file of the present case. The trial court also stated that it recalled conversations with both parties during the trial about the fact that the accomplice's sentence was pending, because the court had granted the motion for reconsideration on September 2, 1992, as reflected by a public document also contained in the file of the present case. The trial court further stated that it had granted the motion for reconsideration of sentence without any conversations with representatives of the State, but rather had granted it on the merits "and it was all right in here in the file for anybody to see, the whole world." The trial judge concluded:
 "And I thought it might be the subject of cross-examination but, again, also I don't think it's that big of deal so far what the outcome of the case would have been or the assessment of credibility of this particular witness's testimony in light of all the other evidence in the case as well."
Thus, the record indicates this evidence was available from another source, specifically the case file, therefore, the State was under no duty to disclose the evidence to the defense. Hurst v. State, 469 So.2d 720 (Ala.Cr.App. 1985). Moreover, the appellant has failed to show that the State suppressed this evidence, as required by Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). See also Exparte Dickerson, 517 So.2d 628 (Ala. 1987).
It is within the sound discretion of the trial court whether to grant a motion for new trial and this court, when reviewing that decision, will indulge every presumption in favor of the correctness thereof. Maddox v. State, 520 So.2d 143, 154
(Ala.Cr.App. 1986). The trial court's determination that the motion for a new trial should be denied was proper.
AFFIRMED.
All Judges concur.
[1] Kelli Lowe Dunn testified at trial that, on December 16, 1991, at the time of the offense, she was unmarried and her name was Kelli Lynn Lowe.
[2] The appellant argues in brief that there were 18 potential jurors excused for cause based on prejudice from pre-trial publicity; however, the record indicates that only 15 potential jurors were excused directly because of prejudice from pre-trial publicity.
[3] There was evidence introduced that two shots were fired into the victim's automobile. One of the accomplices testified that he fired his gun into the victim's automobile and another accomplice verified that fact and further testified that he also fired at the victim's automobile. There was also evidence that all of the perpetrators were armed. *Page 999